1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    Maria Brandon; Jerry Brandon,        )   CV 12-00788-PHX-FJM
                                          )
10              Plaintiffs,               )   **ORDER**
                                          )
11   vs.                                  )
                                          )
12                                        )
     Tom Liddy; Stacy Liddy; Rocky Armfield;)
13   Chris Armfield; Maricopa County; Sandi)
     Wilson; Paul Wilson,                 )
14                                        )
                Defendants.               )
15                                        )
                                          )
16   _____ )

17

18        The court has before it defendants Rocky and Chris Armfield, Maricopa County, and

19   Sandi and Paul Wilson's ("defendants") motion for judgment on the pleadings (doc. 34),

20   plaintiff's response (doc. 37) and separate statement of facts (doc. 38), and defendants' reply

     (doc. 41).[1]

21
                                          **I**
22
          When considering a motion for judgment on the pleadings we accept allegations in
23
     the pleadings as true.  Dunlap v. Credit Prot. Ass'n, L.P., 419 F.3d 1011, 1012 n.1 (9th Cir.
24

25   _____

26        [1] Jerry Brandon, Chris Armfield, and Paul Wilson are included as parties pursuant to
     Arizona community property law.  However, this motion concerns Maria Brandon's
27   employment with the County and her interactions with Sandi Wilson and Rocky Armfield.
     Accordingly, we will simply refer to Maria Brandon as "plaintiff," Sandi Wilson as "Wilson,"
28   and Rocky Armfield as "Armfield."

2005).  Plaintiff began working for Maricopa County ("the County") as a lawyer in 1979. In 1986, she moved to the  Maricopa County Attorney's Office ("MCAO").  Armfield was the Risk Manager for the County.  Wilson was Deputy County Manager and supervised Armfield.  In 2007, the MCAO and the County Board of Supervisors ("the Board") began arguing over who was responsible for allocating funds to the MCAO.  As a result of this conflict, in 2009 the Board pulled its lawsuits from then-County Attorney Andrew Thomas's civil division, and sent the cases to two new legal offices it created, including the Office of Special Litigation.  Plaintiff moved to a position with Special Litigation in August 2009.

In February 2010, plaintiff was working on lawsuits filed by a group of seven Sheriff Joe Arpaio protestors.  She requested settlement authority from the Risk Management department in the amount of $7,500 per protestor.  Plaintiff later learned that Armfield (without her knowledge) had obtained additional authority in the amount of $100,000 per protestor.  A mediation was scheduled for these lawsuits on July 6, 2010.  A few days before, plaintiff sent an e-mail to her client, the Maricopa County Sheriff's Office ("MCSO"), concerning the settlement authority.  The claims of six of the seven protestors were settled at the mediation over MCSO's objections in amounts ranging from $24,700 to $99,999.

The Arizona Republic, a local newspaper, obtained a copy of plaintiff's confidential e-mail to the MCSO.  It published a front-page article on July 9, 2010 about the settlement amounts awarded.  The article detailed the substance of plaintiff's e-mail, including her statement that payouts were increased because Armfield obtained additional settlement authority behind her back.  Plaintiff alleges that Armfield immediately retaliated by pulling cases from her representation.  Later that year, Armfield refused to send any risk cases requiring representation of Sheriff Arpaio or the County Attorney to Special Litigation.

A new County Attorney was elected in November 2010.  He announced plans to fold the two legal offices created by the Board into the newly-created Civil Services Division of the MCAO.  Special Litigation was shut down in April 2011.  During the transition period, plaintiff alleges that Wilson designed a salary structure that would slash salaries of Special Litigation lawyers who had represented Sheriff Arpaio and former County Attorney Thomas.

1   Armfield and Wilson allegedly insisted that Special Litigation lawyers, including plaintiff,

2   not be given risk cases or trials once they returned to the MCAO.

3        Plaintiff was offered the position of Senior Attorney in the MCAO Civil Services

4   Division by MCAO Practice Group Leader Tom Liddy.   Plaintiff's salary was $7,737 less

5   than her compensation at Special Litigation.  Plaintiff, along with all other lawyers moving

6   from Special Litigation, was placed on probation.  Liddy told plaintiff that Wilson and

7   Armfield demanded that she be fired because of the 2010 newspaper article, and because of

8   legal advice she gave involving the "pre-AHCCCS" cases, which settled in 1998. According

9   to plaintiff, Wilson opposed the settlement at the time, and has been central in blocking

10  settlement of the few remaining claims.

11       Plaintiff was removed from all risk cases on June 6, 2011.  She alleges that defendants

12  told MCAO support staff that she was no longer working on risk cases.  On June 8, 2011,

13  plaintiff was physically assaulted by her legal assistant.  Tom Liddy was not in his office at

14  the time, so plaintiff reported the assault to the Chief of the Civil Services Division.  Liddy

15  fired plaintiff on June 10, 2011.  He held a meeting of litigation group employees that same

16  day, where he warned the employees that termination of employment was the consequence

17  of going around him to directly report to the Chief.  He also revealed (and, plaintiff alleges,

18  mischaracterized) details from plaintiff's human resources file.

19       Plaintiff sent a notice of claim to the County, Armfield, and Wilson on October 17,

20  2011.  Mot., ex. A.  After filing this action in April 2012, plaintiff amended her complaint

21  on June 7, 2012 (doc. 22).   The amended complaint asserts eight counts against these

22  defendants: (I) deprivation of property and liberty interests in employment, in violation of

23  42 U.S.C. § 1983; (II) deprivation of liberty interest in professional reputation, in violation

24  of 42 U.S.C. § 1983; (III) unconstitutional policies, customs, and failure to train in violation

25  of 42 U.S.C. § 1983; (IV) violation of First Amendment right of freedom of speech in

26  violation of 42 U.S.C. § 1983; (V) slander and defamation; (VI) tortious interference with

27  contractual relations; (VII) wrongful termination; and (VIII) negligent training, supervision,

28  retention and hiring.  Defendants move for judgment on the pleadings on Counts II, III, V,

1  VI, VII, and VIII.

2  <center>**II**</center>

3  Defendants argue that Counts V, VI, and VIII must be dismissed because plaintiff
4  failed to comply with Arizona's Notice of Claim statute. Plaintiff claims that we must treat
5  the instant motion as one for summary judgment, because it requires us to look at the notice
6  of claim. We may properly consider evidence outside of the pleadings without converting
7  the motion, however, if "(1) the complaint refers to the document; (2) the document is central
8  to the plaintiff's claim; and (3) no party questions the authenticity" of the document. See
9  Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006). Here, the notice of claim is expressly
10 mentioned in plaintiff's complaint. Compl. ¶ 1. It is central to her state law claims, because
11 these claims are barred unless a proper notice of claim was filed. See Backus v. State, 220
12 Ariz. 101, 103, 203 P.3d 499, 501 (2009). And plaintiff does not question the authenticity
13 of the notice of claim attached to defendants' motion. Accordingly, we may consider the
14 notice of claim.

15 A notice of claim, in addition to being timely, must (1) "contain facts sufficient to
16 permit the public entity or public employee to understand the basis upon which liability is
17 claimed;" (2) "contain a specific amount for which the claim can be settled;" and (3) contain
18 "the facts supporting that amount." A.R.S. § 12-821.01(A). It must apprise the entity or
19 employee of liability, but need not meet federal pleading standards. See Mitchell v. City of
20 Flagstaff, CV-11-8140-PCT-FJM, 2011 WL 5826014, at *2 (D. Ariz. Nov. 18, 2011) ("The
21 omission of a legal buzzword from a notice of claim will not render it defective if facts are
22 stated that enable an entity to understand the basis of liability.").

23 To prevail on her defamation claim, plaintiff must show (1) a false statement of fact;
24 (2) publication of the statement; and (3) harm to her reputation. See Turner v. Devlin, 174
25 Ariz. 201, 203-04, 848 P.2d 286, 288-89 (1993). Plaintiff alleges that defendants lied about
26 the legal advice she gave with respect to her settlement of the pre-AHCCCS cases, and
27 published these false statements to Tom Liddy and others in MCAO management. The

28

<center>- 4 -</center>

notice of claim discusses at length the reduction of plaintiff's salary, argues that she was wrongfully terminated due to defendants' failure to comply with the County Employee Merit System, that defendants were wrong in concluding that she failed to complete her probationary period, and speculates that she was terminated because of "ill will, malice, personal, political or professional agenda." <u>Mot.</u>, ex. A at 9.  It states that Wilson "caused and contributed" to her salary reduction, termination, and denial of her rights under the Merit System, and states that Armfield "caused and contributed" to her salary reduction, her termination, and her removal from risk management cases.  <u>Id.</u> at 3.  However, the notice of claim does not discuss any false statements made by Armfield or Wilson, and does not discuss damage to plaintiff's reputation.  It does not even mention the pre-AHCCCS cases. In sum, there are no facts from which these defendants could reasonably infer that they might be liable for defamation.  Accordingly, because plaintiff did not comply with A.R.S. § 12-821.01(A) with respect to the defamation claim, Count V is barred.

Defendants argue that Count VI for tortious interference with a contract should be similarly barred.  We disagree.  The notice of claim outlines the reasons for plaintiff's disagreement with the termination of her employment under a section titled "Wrongful Termination. . . Breach of Contract." <u>Mot.</u>, ex. A at 5.  It notes that this claim arises, among other things, "under applicable contract law." <u>Id.</u>  It alleges that County employees "implemented a course of action designed to move [plaintiff]" to a position where she could be terminated arbitrarily, and proceeded "with a course of action designed" to deprive her of the rights and benefits she secured through years of service with the County. <u>Id.</u> at 8-9.  The notice of claim also alleges that Wilson and Armfield played a role in plaintiff's termination. It would be reasonable for defendants to infer from reading the notice of claim that plaintiff, by alleging that defendants plotted to remove her from her position arbitrarily and specifically referring to a breach of contract, may raise claims for tortious interference relating to the termination of her employment contract.  The notice of claim lists sufficient facts to apprise these defendants of liability for tortious interference.

Finally, defendants argue that the notice of claim was deficient with respect to plaintiff's negligent training, hiring, supervision, and retention claim in Count VIII. The notice of claim discusses various provisions of the Merit System that plaintiff believes were violated. She also alleges that the proffered reason for termination, her purported failure to complete her probationary period, was pretext and violated various provisions of the Merit System. <u>Mot.</u>, ex. A at 6-22. These facts chronicle a list of alleged missteps taken by the County in terminating plaintiff's position, a process that plaintiff claims involved Wilson and Armfield. These facts are sufficient to apprise defendants of the possibility that plaintiff may raise claims relating to negligent training, hiring, supervision, or retention of County employees. <u>See</u> <u>Mitchell</u>, 2011 WL 5826014 at *3 (facts alleging that police officer unreasonably reacted to a domestic disturbance by shooting a man in the back were "sufficient to place the City on alert that its training or supervision" of the officer "might have been negligent").

## III

Defendants argue that plaintiff failed to state a claim in Counts II, III, VI, VII, and VIII.[2] We apply federal pleading standards to plaintiff's claims. <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1125 (9th Cir. 2009) ("It is well-settled that the Federal Rules of Civil Procedure apply in federal court, irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.") (internal quotation marks and citation omitted). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). A claim is plausible when it contains enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

---

[2] Defendants also argue that plaintiff failed to state a claim in Count V. Because we have already held that the defamation claim is barred for failure to comply with the notice of claim statute, we do not address Count V here.

1    Injury to reputation alone is not a liberty or property interest protected by the
2    Constitution. Wenger v. Monroe, 282 F.3d 1068, 1074 (9th Cir. 2002). To prevail on the
3    liberty claim raised in Count II, plaintiff must have been subjected to "stigma plus." Id. She
4    must show that (1) the state has made a charge that could "seriously damage" her standing
5    in the community; (2) the charge's truth is questioned; (3) the charge has been publically
6    disclosed; and (4) the charge was made "in connection with the termination of employment
7    or the alteration of some right or status recognized by state law." Id. (citing Llamas v. Butte
8    Cmty. Coll. Dist., 238 F.3d 1123, 1129 (9th Cir. 2001)). In Count II, plaintiff generally
9    alleges that defendants "both before and after [p]laintiff's dismissal deprived [plaintiff] of her
10   liberty interest in her professional reputation by. . . spreading lies and untruths about her that
11   were false and made public, and stigmatized and defamed her professional reputation in
12   connection with removing risk cases from her." Compl. ¶ 98. This recitation of the
13   elements, standing alone, does not satisfy Iqbal and Twombly's requirement that sufficient
14   facts be pled.

15   Plaintiff has not alleged that Armfield and Wilson made a charge against her in
16   connection with her termination. Elsewhere, plaintiff alleges that Tom Liddy (a County
17   employee) held a meeting of litigation department employees, where he presented a false and
18   demeaning explanation for why plaintiff was fired, telling employees that she had abused her
19   support staff. Compl. ¶ 84. Even assuming that this story constitutes a charge, and assuming
20   Liddy's statements can render the County liable, plaintiff does not allege facts showing that
21   Liddy's statements were disclosed to the public. Wenger concluded that there was no public
22   disclosure when statements about Wenger "were made to other branches of the military"
23   rather than to the public. Wenger, 282 F.3d at 1074 n.5. Here, plaintiff alleges only that
24   Liddy made statements to others within her own department. Similarly, plaintiff alleges that
25   statements made by Wilson and Armfield concerning her removal from risk cases were made
26   to other MCAO employees, not the general public. Count II is dismissed against these
27   defendants.

28

1    In Count III, plaintiff alleges that defendants were deliberately indifferent in failing

2   to train their employees, and failed to adopt policies to ensure fairness and a non-hostile work

3   environment.  Plaintiff names a number of defendants' actions that she alleges violate the

4   Arizona Constitution and County policy.  Compl. ¶¶ 107-108.  Discrete actions, however,

5   are not necessarily policies, practices, or customs.  Plaintiff does not provide any details or

6   identify the allegedly unconstitutional policies.  Bare allegations concerning unconstitutional

7   policies are insufficient post-Iqbal.  See AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d

8   631, 636-37 (9th Cir. 2012) (bare allegations concerning "some unidentified government

9   policy or custom" are no longer sufficient to state a Monell claim).  Moreover, plaintiff does

10  not allege why existing training was insufficient to protect her rights.  See City of Canton,

11  Ohio v. Harris, 489 U.S. 378, 390, 109 S. Ct. 1197, 1205 (1989) (inadequacy of training must

12  be obvious such that policymakers "can reasonably be said to have been deliberately

13  indifferent to the need" for better training).  Accordingly, plaintiff has not stated a plausible

14  claim for relief in Count III.

15    To prevail on her claim in Count VI for tortious interference with contractual

16  relations, plaintiff must show "(1) the existence of a contract between the plaintiff and a third

17  party, (2) the defendant's knowledge that the contract exists, (3) intentional interference by

18  the defendant that caused the third party to breach the contract, (4) defendant's conduct

19  constituted improper conduct, and (5) damages." McBurnie v. City of Prescott, CV-09-8139-

20  PCT-FJM, 2010 WL 5344927, at *5 (D. Ariz. Dec. 22, 2010) (citing Safeway Ins. Co., Inc.

21  v. Guerrero, 210 Ariz. 5, 10, 106 P.3d 1020, 1025 (2005)).  Plaintiff alleges that Wilson and

22  Armfield, County employees, interfered with her employment contract with County Attorney

23  Bill Montgomery to work in the Civil Services Division of the MCAO.  Defendants argue

24  that this is fatal to her claim, because a person acting on an employer's behalf is acting as the

25  employer and cannot interfere with his own contract. This argument, however, was explicitly

26  rejected by the Arizona Supreme Court in Wagenseller v. Scottsdale Mem. Hosp., 147 Ariz.

27  370, 710 P.2d 1025 (1985) (superseded by statute on other grounds).  Wagenseller held that

28

an employee can be liable for tortious interference with an employment contract if that employee's actions were improper. <u>Id.</u> at 386-87, 710 P.2d at 1041-42; <u>see also</u> McBurnie, 2010 WL 5344927, at *5.

Plaintiff alleges that she entered into an employment contract with the County Attorney in 2011.  She further alleges that Wilson and Armfield, for personal reasons, engaged in an improper campaign to persuade defendant Tom Liddy to terminate her employment.  Specifically, she alleges that Wilson and Armfield attempted to discredit plaintiff's work on the pre-AHCCCS cases in meetings with Liddy and argued that she should be fired because of the Arizona Republic article. <u>Compl.</u> ¶¶ 68-71.  She alleges that Liddy fired her in part due to the pressure placed on him by Armfield and Wilson.  Accepting these allegations as true, plaintiff has stated a plausible claim for tortious interference with contractual relations.

As applicable here, Arizona permits a wrongful termination claim when an employee's position is terminated because she refuses to commit an act that violates an Arizona law, or because she reported a violation of Arizona law.  A.R.S. § 23-1501(3)(c).  In Count VII, plaintiff alleges that she was fired to punish her for the Arizona Republic article.  Defendants argue that plaintiff has not stated a plausible wrongful termination claim, because she has not alleged refusal to engage in or the reporting of any conduct violating Arizona law.  We disagree.

Although not specifically alleged in Count VII, elsewhere in her complaint plaintiff alleges that the inflated settlement amounts were offered to the anti-Arpaio protestors in 2010 as part of a plan to blame the costs on Arpaio and Thomas. <u>Compl.</u> ¶ 28.  Plaintiff alleges that this conduct violated Article 9 § 7 of the Arizona Constitution (the Gift Clause), which prohibits disbursing public funds for private benefit. <u>Compl.</u> ¶¶ 41-42.  She alleges that the Arizona Republic article leaked her e-mail, where she criticized the settlement limits. <u>Compl.</u> ¶ 43-44.  Finally, plaintiff alleges that her employment was terminated in part as retaliation for the Arizona Republic article. <u>Compl.</u> ¶¶ 68, 108, 139.  Plaintiff has stated a

1    plausible claim for wrongful termination.

2          Finally, in Count VIII, plaintiff alleges that defendants were negligent in supervising,

3    training, retaining, and hiring employees, causing defendants "and their. . . employees" to

4    commit acts including retaliation, assault, and interference with employment contracts, which

5    caused her injury and harm.  Compl. ¶ 144.  Defendants argue that the state workers'

6    compensation statute provides the exclusive remedy for this claim.  That statute makes

7    workers' compensation "the exclusive remedy" for a plaintiff injured in the workplace against

8    an employer or employee acting in the scope of his employment, unless "the injury is caused

9    by" either the employer or the employee's "wilful misconduct."  A.R.S. § 23-1022(A); see

10   also Irvin Investors, Inc. v. Superior Court, 166 Ariz. 113, 114-15, 800 P.2d 979, 980-81 (Ct.

11   App. 1990).  The statute addresses compensation for unexpected or accidental emotional

12   injuries as well as physical injury.  Ford v. Revlon, Inc., 153 Ariz. 38, 44, 734 P.2d 580, 586

13   (1987).

14         Plaintiff argues that she has adequately pled wilfulness, because she has pled that

15   these defendants either knew of the acts or committed the acts themselves.  On the one hand,

16   plaintiff alleges that defendants were negligent in training, supervising, hiring, and retaining

17   themselves, and that their own negligence caused themselves to commit intentional acts.

18   This defies logic.[3]   On the other hand, plaintiff alleges that defendants negligently

19   supervised, trained, hired, and retained other employees, which led to the commission of

20   wilful conduct by others.  Ultimately, because plaintiff is seeking to hold defendants liable

21   on account of their negligence, her claim for negligent supervision does not fall under the

22   wilful misconduct exception and fails as a matter of law.  See Mosakowski v. PSS World

23   Med., Inc., 329 F. Supp. 2d 1112, 1131 (D. Ariz. 2003) (analyzing Irvin and Ford,

24   concluding these cases establish that a "negligence claim is precluded by [Arizona's] workers

25   compensation statutes"); Rosen v. Cmty. Educ. Ctrs., Inc., CV-10-0584-PHX-FJM, 2010 WL

26

27         [3] As discussed above, plaintiff has asserted other claims against Armfield and Wilson
28   seeking to hold them liable for their own intentional conduct.

3981200, at *4 (D. Ariz. Oct. 8, 2010) (even if employee acted wilfully in assaulting plaintiff, "culpability at issue in [plaintiff's] negligent supervision claim" was employer's negligent failure to prevent the assault; claim did not fall under the wilful misconduct exception). Accordingly, we do not address defendants' alternative argument that Count VIII fails to state a plausible claim.

## IV

**IT IS ORDERED GRANTING IN PART** Rocky and Chris Armfield, Maricopa County, and Sandi and Paul Wilson's motion for judgment on the pleadings (doc. 34). Counts II, III, V, and VIII are **DISMISSED** against these defendants.

DATED this 13th day of September, 2012.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge