1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8

9    Maria Brandon,                    )    No. CV-12-0788-PHX-FJM
                                        )
10              Plaintiff,              )    **ORDER**
                                        )
11   vs.                                )
                                        )
12                                      )
     Tom Liddy, et al.,                 )
13                                      )
                Defendants.             )
14                                      )
     _____   )
15

16

17          Before the court is Defendants Maricopa County, Sandra Wilson, and Rocky

18   Armfield's motion for judgment as a matter of law, or in the alternative for a new trial (doc.

19   217), Plaintiff Maria Brandon's response (doc. 225), and Defendants' reply (doc. 226).  After

20   a seven-day trial, the jury returned a verdict in favor of Brandon and against Maricopa

21   County on Brandon's claim under 42 U.S.C. § 1983 for violation of Brandon's First

22   Amendment rights and awarded nominal damages of $1.00.  The jury also found in favor of

23   Brandon and against Defendants Armfield and Wilson on Brandon's state law claim of

24   tortious interference with employment contract and awarded Brandon $638,147.94.

25   Defendants have filed this motion for judgment as a matter of law challenging these verdicts.

26                                      **I.**

27          Defendants first argue that the jury's verdict against Maricopa County on Brandon's

28   First Amendment claim conflicts with the verdict in favor of the County on Brandon's

1    wrongful termination claim, such that the verdicts must be vacated.  According to Defendants
2    the verdicts on the two claims are legally indistinguishable and thus no rational jury could
3    find liability on one claim and not the other.  Defendants' efforts to characterize this as
4    something other than an inconsistency argument are wholly unpersuasive.

5         Where a verdict "contains two legal conclusions that are inconsistent with one
6    another," a party must object before the jury is discharged or risk waiving the objection.
7    Kode v. Carlson, 596 F.3d 608, 611 (9th Cir. 2010); Zhang v. Am. Gem Seafoods, Inc., 339
8    F.3d 1020, 1030-36 (9th Cir. 2003).  After the verdicts were read in court, we asked the
9    lawyers if they fully understood each of the verdicts.  Tr. (doc. 195) at 22-23.  We cautioned
10   that we did not want to discharge the jury if there was going to be "any issue about what
11   these verdicts mean."  Id.  Both counsel responded they had no questions.  Id.  By failing to
12   make an objection before the jury was discharged, Defendants have waived the argument that
13   the general verdicts rendered by the jury are legally inconsistent.  See Zhang, 339 F.3d at
14   1030-36; Philippine Nat'l Oil Co. v. Garrett Corp., 724 F.2d 803, 806 (9th Cir. 1984).

15        Even if waiver was not dispositive, we would nevertheless deny Defendants' motion.
16   Defendants challenge what they believe are legal inconsistencies in the jury's conclusions
17   on two or more general verdicts.  Legal inconsistencies between general verdicts on different
18   claims "are not an anomaly in the law" and are generally upheld.  Zhang at 1035-36
19   (collecting cases).  Courts will recognize a jury's right to such "an idiosyncratic position,
20   provided the challenged verdict is based upon the evidence and the law."  Id. at 1036.

21        The jury's verdict finding that Maricopa County violated Brandon's First Amendment
22   rights when it terminated her for her statement to the *Arizona Republic* is supported by more
23   than sufficient evidence.  We will not speculate as to how the jury arrived at the verdicts.
24   Had Defendants objected before the jury was discharged, we might have had the answer.
25   Regardless of the jury's rationale, however, because the challenged verdicts are supported
26   by the evidence and the law, Defendants' motion for judgment as a matter of law, or
27   alternatively for a new trial on the basis of inconsistent verdicts is denied.

28                                        **II.**

Maricopa County next challenges the jury's verdict in favor of Brandon on her § 1983 claim that her First Amendment rights were violated when she was fired in retaliation for a statement she made to a reporter at the *Arizona Republic*.  The statement involved a case that Brandon handled while working for the Maricopa County Attorney's Office ("MCAO").  Maricopa County argues that there was insufficient evidence produced at trial from which the jury could conclude that Brandon acted in her capacity as a private citizen, rather than a public employee, when she spoke to the press.

"Speech by citizens on matters of public concern lies at the heart of the First Amendment."  Lane v. Franks, 134 S. Ct. 2369, 2377 (2014).  Accordingly, "citizens do not surrender their First Amendment rights by accepting public appointment."  Id. at 2374.  Nor does speech made at work or concerning work lose its First Amendment protection.  Garcetti v. Ceballos, 547 U.S. 410, 420-21, 126 S. Ct. 1951, 1959 (2006).  "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  Id. at 421, 126 S. Ct. at 1960.  Conversely, a public employee speaks as a private citizen with protected speech "if the speaker had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform."  Posey v. Lake Pend Oreille Sch. Dist., 546 F.3d 1121, 1127 n.2 (9th Cir. 2008) (citations omitted).  The key inquiry in determining whether speech is public or private is whether the speech was made pursuant to the employee's official duties.  Garcetti, 547 U.S. at 421, 126 S. Ct. at 1959-60.

Whether a public employee is speaking as a private citizen or public employee is a mixed question of law and fact.  Posey, 546 F.3d at 1129.  "[T]he question of the scope and content of a plaintiff's job responsibilities is a question of fact," and "the ultimate constitutional significance of the facts as found is a question of law."  Eng v. Cooley, 552 F.3d 1062, 1071 (9th Cir. 2009) (quoting Posey, 546 F.3d at 1129-30).

In arguing that Brandon spoke to the press as a public employee whose speech is not protected by the First Amendment, Defendants rely on evidence that Brandon spoke to an

1    *Arizona Republic* reporter (1) about a case she handled in her capacity as deputy county

2    attorney, (2) the resulting newspaper article identified her by her official job title and

3    described her official involvement in the case, and (3) the speech took place in Brandon's

4    office, on her office phone, during business hours. Defendants urge that these facts require

5    a finding as a matter of law that Brandon acted in her official capacity when she spoke to the

6    press. This argument misses the mark.

7       The Supreme Court has made clear "the mere fact that a citizen's speech concerns

8    information acquired by virtue of his public employment does not transform that speech into

9    employee–rather than citizen–speech." <u>Lane</u>, 134 S. Ct. at 2379. Indeed, the Court has

10    recognized that speech by public employees on matters related to their employment "holds

11    special value precisely because those employees gain knowledge of matters of public concern

12    through their employment." <u>Id.</u> (citing <u>Pickering v. Bd. of Educ.</u>, 391 U.S. 563, 572, 88 S.

13    Ct. 1731, 1736 (1968)). "[I]t is essential that [public employees] be able to speak out freely

14    on such questions without fear of retaliatory dismissal." <u>Pickering</u>, 391 U.S. at 572, 88 S.

15    Ct. at 1736.

16       The evidence presented at trial established that Brandon's official job duties did not

17    include speaking to the press. William Montgomery, Maricopa County Attorney and

18    Brandon's supervisor, testified that Brandon was not speaking on behalf of the MCAO when

19    she spoke to the reporter. Montgomery testified that there was "nothing to indicate she was

20    doing anything other than speaking as a citizen." <u>Tr.</u> (doc. 206) at 59. Mark Faull, Chief

21    Deputy Maricopa County Attorney, testified that when speaking to the press, deputy county

22    attorneys are speaking on behalf of themselves unless they have cleared their statements with

23    the County Attorney. <u>Tr.</u> (doc. 208) at 185.

24       No evidence was presented at trial demonstrating that speaking to the press was part

25    of Brandon's official duties. Accordingly, the jury reasonably concluded that Brandon was

26    speaking as a private citizen and not as part of her official duties when she made her

27    statement to the press.

28       We acknowledge the County 's interest in "promoting efficiency and integrity in the

discharge of official duties" and "maintain[ing] proper discipline in the public service," including the authority to discipline its employees for improper or harmful comments to the press. Connick v. Myers, 461 U.S. 138, 150-51, 103 S. Ct. 1684, 1692 (1983) (quotations omitted).  However, Defendants have made no effort to show that the County's interest in maintaining proper discipline outweighed Brandon's right to speak.  For example, Defendants presented no evidence that Brandon's statement to the press violated her employer's rule or policy, or that the statement was false, harmful, confidential, or privileged. See Lane, 134 S. Ct. at 2381.  Nor do Defendants contend that Brandon's speech somehow disrupted the workplace or interfered with her duties.  Under these circumstances, we conclude that Brandon's speech was entitled to First Amendment protection. Defendants' motion for judgment as a matter of law on Brandon's First Amendment claim is denied.

**III.**

Defendants next present several challenges to the jury's verdict finding in favor of Brandon and against Sandra Wilson and Rocky Armfield on Brandon's state law claim for tortious interference with employment contract and the award of $638,147.94 in damages.

**A.**

Defendants argue that they are entitled to judgment as a matter of law because a person acting on behalf of an employer is acting as the employer and cannot interfere with its own contract.  We have rejected this argument multiple times throughout this case.

To prevail on a claim for tortious interference with contract, a plaintiff must show (1) a valid contractual relationship between plaintiff and a third party, (2) the defendant's knowledge of the contract, (3) intentional interference by defendant that caused the third party to breach the contract, (4) defendant's conduct was improper, and (5) damages.  See Wagenseller v. Scottsdale Mem'l Hosp., 147 Ariz. 370, 386, 710 P.2d 1025, 1041 (1985) (superseded by statute on other grounds).  Only the first factor is at issue in the present motion.

It is undisputed that the employment contract was between Maria Brandon and Maricopa County Attorney William Montgomery, an elected public official with duties

- 5 -

prescribed under A.R.S. § 11-532.  As County Attorney, Montgomery has the authority to appoint the staff necessary to conduct the affairs of his office.  A.R.S. § 11-409.  Brandon was appointed pursuant to this authority.  Defendants' broad characterization of Brandon's employer as "Maricopa County" inaccurately describes the parties to Brandon's employment contract.

In contrast, Defendant Sandra Wilson was the Deputy County Manager whose responsibilities included oversight of Risk Management, and Rocky Armfield was the Director of Risk Management.  Both Wilson and Armfield conceded that they had no supervisory authority over Brandon or any Maricopa County attorney, and that it would be inappropriate for them to interfere with Brandon's employment relationship with the MCAO.  Tr. (doc. 207) at 17 (Wilson); Tr. (doc. 207) at 75 (Armfield).  While the Board of Supervisors has authority to fix salaries and consent to appointments within the MCAO, A.R.S. § 11-409, neither the Board, nor Risk Management was a party to the employment contract or could dictate the assignment of Risk Management cases.  Tr. (doc. 206) at 36-37.  Thus, the third-party prong of Wagenseller is satisfied.

Defendants cite to numerous cases where courts have rejected tortious interference with employment contract claims asserted against an employee's supervisor.  See, e.g., Mintz v. Bell Atl. Sys. Leasing Int'l, Inc., 183 Ariz. 550 (Ct. App. 1995); Spratt v. Northern Auto. Corp., 958 F. Supp. 456 (D. Ariz. 1996); Villodas v. HealthSouth Corp., 338 F. Supp. 2d 1096 (D. Ariz. 2004).  The courts reasoned that the supervisor is acting on behalf of the employer, and thus there is no third-party.  These cases are inapplicable here, however, because neither Wilson nor Armfield was Brandon's supervisor.  When Wilson and Armfield demanded that Brandon be removed from Risk Management cases, they were not acting on behalf of Brandon's employer–the Maricopa County Attorney.  Instead, the evidence produced at trial showed that Wilson and Armfield had no authority over the terms and conditions of Brandon's employment, including her work assignments.

The jury could have reasonably concluded that Wilson and Armfield tortiously interfered with Brandon's employment contract with the Maricopa County Attorney when

they improperly and outside the scope of their authority, demanded that Brandon be removed from all Risk Management cases, resulting in a 95% reduction in her workload, and ultimately her termination. Defendants' motion for judgment as a matter of law on the claim of tortious interference with employment contract is denied.

**B.**

Defendants also challenge the jury's damages award of $638,147.94 against Wilson and Armfield on the tortious interference claim. They first argue that there is insufficient evidence of a causal connection between Wilson and Armfield's wrongful conduct—demanding that Brandon's cases be reassigned—and the damage award associated with her termination—lost wages and benefits. We disagree.

There was ample evidence at trial of the role that Wilson and Armfield played in transferring Risk Management cases away from Maria Brandon. Tr. (doc. 204) at 191. The jury could have reasonably concluded that Wilson and Armfield's efforts to remove Brandon from Risk Management cases all but eliminated her workload and undermined her reputation and standing in the Maricopa County Attorney's Office, ultimately leading to her discharge. There is more than sufficient evidence of a causal connection between Wilson and Armfield's wrongful conduct and Brandon's damages.

**C.**

Defendants also challenge the damages award as not supported by the evidence. They believe that the only evidence of damages presented at trial related to Brandon's salary and benefits amounting to no more than $400,000. Defendants argue that the jury's award of "nearly twice that amount" is excessive and not supported by the evidence. Again we disagree.

The jury returned a general verdict identifying a total damage award without any specification as to how that award was determined. On its face, a damage award of over $600,000, calculated to the penny, indicates that the jury carefully considered the award.

Brandon sought damages not only for lost wages and benefits, but also past and present damages for mental, physical and emotional pain, damage to her reputation, social

and business standing, and the value of lost employment opportunities. <u>Tr.</u> (doc. 204) at 191-94; <u>Tr.</u> (doc. 205) at 37; <u>Tr.</u> (doc. 210) at 78-79. "Once the right to damages is established, uncertainty as to the amount of damages does not preclude recovery." <u>Felder v. Physiotherapy Assocs.</u>, 215 Ariz. 154, 162, 158 P.3d 877, 885 (Ct. App. 2007). Brandon testified about the emotional and economic consequences she suffered as a result of her termination at the age of 62 after 33 years of employment with the County. The jury could have reasonably concluded that an additional award of $240,000 fairly compensated Brandon for these imprecise, but not speculative, injuries.

### D.

Finally, we reject Defendants' argument that because the client has a fundamental right to select its lawyer, public policy and professional ethics dictate that Wilson and Armfield cannot be liable for insisting that Brandon not work on Risk Management cases. But Risk Management is not the "client" for purposes of this analysis. Instead, the evidence showed that only Bill Montgomery had the right to assign Risk Management cases to deputy county attorneys. Wilson and Armfield had no authority to select the lawyers or affect the assignment of cases.

### IV.

**IT IS ORDERED DENYING** Defendants' motion for judgment as a matter of law or alternatively for a new trial (doc. 217).

DATED this 2nd day of September, 2014.

_Frederick J. Martone_
Frederick J. Martone
Senior United States District Judge